UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
05-CV-468(JMR/RLE)

| | | |
|---|---|---|
| Lonnie Strandlund, | ) | |
| Christopher Holscher, | ) | |
| Jeremiah Brendsel, and | ) | |
| Richard Krawiecki | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| William Hawley, Mille Lacs | ) | |
| County Sheriff Brent | ) | |
| Lindgren, and Mille Lacs | ) | |
| County | ) | |

While styled as a single cause of action, this case actually presents a confluence of several independent claims.  Faced with this multitude of competing claims, defendants seek summary judgment.

Plaintiffs, Lonnie Strandlund, Christopher Holscher, Jeremiah Brendsel, and Richard Krawiecki, claim they were deprived of their constitutional rights under color of state law pursuant to 42 U.S.C. § 1983.  Plaintiffs also claim they suffered various state torts at the hands of defendants, William Hawley, Mille Lacs County Sheriff Brent Lindgren, and Mille Lacs County.

In order to turn this multitudinous pleading into a potentially triable case, the Court considers it appropriate to sever the claims brought by Christopher Holscher, Jeremiah Brendsel, and Richard Krawiecki.  They may refile their claims separately.  Defendants' motion for summary judgment as to Lonnie Strandlund's claims is granted in part and denied in part.

I.  Background[1]

    Each plaintiff alleges defendant William Hawley, a Mille Lacs County Sheriff's Deputy, used excessive force against them in his official capacity.  With the exception of this allegation, plaintiffs' claims are entirely unrelated.

    A.  Plaintiff Richard Krawiecki

    Richard Krawiecki claims Deputy Hawley approached him outside his home in Foreston, Minnesota, on November 29, 2003, regarding a suspected drinking and driving violation.  Krawiecki claims Deputy Hawley punched him in the eye, and then commanded Taz, his police dog, to bite and hold, causing permanent injury.  Deputy Hawley then arrested Krawiecki, transported him to the hospital in Milaca, and thereafter to the Mille Lacs County Jail.  Krawiecki was charged with driving while impaired and refusing to allow his blood alcohol content to be tested.  Krawiecki pleaded guilty to refusing the test.

    B.  Plaintiffs Christopher Holscher and Jeremiah Brendsel

    Plaintiffs Holscher and Brendsel claim that on May 23, 2004, they were riding four wheelers on private property near Onamia, Minnesota.  Deputy Hawley, responding to a call, saw them, and began to follow them on foot.  These plaintiffs hid in the woods to

_____

    [1]All disputed facts are construed in the light most favorable to plaintiffs, the non-moving party.  Coleman v. Parkman, 349 F.3d 534, 536 (8th Cir. 2003).  The facts recited in this Opinion are based solely upon the pleadings, and are not binding factual determinations.

avoid apprehension.   Using Taz, Deputy Hawley first located plaintiff Holscher.   According to Holscher, after his surrender, Deputy Hawley directed Taz to bite and hold.   Holscher claims he suffered an infection and scar as a result of the bite.

Deputy Hawley and Taz then continued to look for Brendsel. Brendsel claims that, although he surrendered when they approached, Deputy Hawley directed Taz to bite him, which caused great pain and made it difficult for him to walk.   Once both men were arrested, Deputy Hawley transported them to the hospital in Onamia.

Both Holscher and Brendsel claim Deputy Hawley humiliated them at the hospital by forcing them to remove most of their clothing. After their discharge from the hospital, each man was taken to the Mille Lacs County Jail, where they were charged with fleeing an officer and underage drinking.   Both pleaded guilty to the offenses.

C.   Plaintiff Lonnie Strandlund

On July 17, 2004, Lonnie Strandlund, then the mayor of Foreston, Minnesota, attended Foreston's Fun Days street dance. While there, and standing about fifteen feet from the developing situation, he observed his son-in-law on his knees surrounded by several sheriff's deputies.   Deputy Hawley was nearby, having received a call about a fight taking place in front of a bar.

Strandlund stepped forward to better observe the incident and asked, "What's this all about?"   According to Strandlund, before he finished asking his question, Deputy Hawley tackled him from behind,

knocking him to the ground.  Defendants aver that, when Deputy
Hawley saw the heated situation, and fifteen to twenty people
converging on the scene, he took it upon himself to keep the crowd
back.

After Strandlund was taken to the ground, he asked Deputy
Hawley, "What are you doing?  Do you know who I am?"  Deputy Hawley
told Strandlund to keep his mouth shut and to leave the area.
Strandlund did so.  Strandlund was not arrested, and no charges were
ever placed against him.  He claims Deputy Hawley's assault caused
him to suffer a stiff neck for several weeks and loss of sleep due
to anger and embarrassment.

D.   The Case

This case attempts to lump these three separate occurrences
into a single lawsuit.  Plaintiffs each claim Deputy Hawley used
excessive force against them.  They further assert Monell[2] liability
against Mille Lacs County and Sheriff Lindgren for constitutional
violations, alleging the County has an informal policy which
tolerates and promotes the use of excessive force.

Plaintiffs allege state torts against Deputy Hawley for
assault, battery, intentional infliction of emotional distress, and
negligence.  Plaintiffs make additional state tort claims against
the County and Sheriff for negligent selection, training, retention,
supervision, investigation, and discipline, as well as vicarious

_____

[2]Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

liability for Deputy Hawley's torts under the doctrine of respondeat superior.

II.  Severance

As part of their summary judgment motion, defendants argue these disparate claims are improperly joined.  Plaintiffs correctly note defendants have not moved for severance.  Their failure to do so does not conclude the issue, however, because Rule 21 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") authorizes the Court to sever parties on its own initiative.  The Court deems it proper to do so here.

A.  Legal Standard

Permissive joinder of parties is governed by Fed. R. Civ. P. 20(a), which states:

> All persons may join in one action as plaintiffs if they
> assert any right to relief jointly, severally, or in the
> alternative in respect of or arising out of the same
> transaction, occurrence, or series of transactions or
> occurrences and if any question of law or fact common to
> all these persons will arise in the action.

The Court, however, retains discretion to determine whether claims are properly joined.  Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974).  Rule 21 provides that, in cases where parties have been misjoined, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.

5

B.  <u>Analysis</u>

1.  <u>Same Transaction or Occurrence</u>

Rule 20(a)'s first requirement for joinder is that "a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences."  <u>Mosley</u>, 497 F.2d at 1333.  A case-by-case approach is used to determine whether a particular factual situation constitutes a single transaction or occurrence, the primary consideration being whether the events are logically related.  <u>Id.</u>

The Court discerns no logical relationship between the incidents alleged in plaintiffs' complaint; they occurred on different days, under different circumstances, in different places, and with different actors.  Two involved the use of a police dog, one did not.  In two cases parties were arrested and independently pleaded guilty to entirely different crimes.  One case occurred near a private home, another in a wooded field.  The third occurred in the midst a crowded town gathering.  The witnesses to each event are different; the facts of each are entirely separate.  The only factor common to the three occurrences is Deputy Hawley.  Simply put, his interactions with the plaintiffs constitute three separate occurrences.

2.   <u>Common Question of Law or Fact</u>

The second requirement for Rule 20(a) permissive joinder is that "some question of law or fact common to all the parties must arise in the action." <u>Id.</u>  Plaintiffs fail to identify a single common question.   The mere fact that Deputy Hawley is the common governmental actor will not suffice.   The propriety, or impropriety, of any of his acts is inextricably bound to the unique details of each interaction.   Plaintiffs' <u>Monell</u> and state tort claims against Sheriff Lindgren and Mille Lacs County depend on particular factual determinations as to each event.   Absent severance, a jury would be required to make separate factual determinations for each incident.   The Court finds it would be confusing and prejudicial to defendants for a single jury to hear evidence and make factual determinations concerning three separate events in one trial.

Accordingly, the parties' claims are hereby severed.  Pursuant to Fed. R. Civ. P. 21, plaintiffs Christopher Holscher, Jeremiah Brendsel, and Richard Krawiecki are dismissed from this suit, as improperly joined; they may refile and proceed separately.   In the event plaintiffs Holscher and Brendsel choose to refile, they may – but are not required to – do so in the same action.

III.  <u>Summary Judgment as to Lonnie Strandlund's Claims</u>

The Court then considers defendants' motion for summary judgment as to Lonnie Strandlund's claims.  Defendants seek summary

7

judgment based upon the doctrines of qualified immunity, official immunity, and statutory immunity.

    A.   <u>Summary Judgment Standard</u>

    Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial.  <u>See</u> <u>Anderson</u>, 477 U.S. at 250; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992).  If the opposing party fails to carry that burden or fails to establish an essential element of its case, summary judgment should be granted.  <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

    B.   <u>Excessive Force Claim Under 42 U.S.C. § 1983</u>

    Lonnie Strandlund claims Deputy Hawley subjected him to excessive force when he tackled him from behind without probable cause to arrest or reasonable suspicion of criminal activity. Deputy Hawley argues he is entitled to qualified immunity.  The Court disagrees.

    1.   <u>Legal Standard for Qualified Immunity</u>

    A police officer entitled to qualified immunity may be awarded summary judgment.  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).

Qualified immunity shields government officials from suit for official acts when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court must resolve qualified immunity questions "at the earliest possible stage of litigation." Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989).

The first inquiry when evaluating qualified immunity is whether "the facts alleged show the officer's conduct violated a constitutional right." Saucier, 533 U.S. at 201. If a violation is established, the court must determine whether the right was clearly established when the violation occurred. Id. A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004) (citing Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)). Unless the officer violated a clearly established constitutional right of which a reasonable person would have known, qualified immunity applies. Gorra, 880 F.2d at 97.

    2.  Analysis

Taking the facts in the light most favorable to plaintiff, the Court finds that when Deputy Hawley tackled Strandlund, his act

violated a clearly established constitutional right.  The right to
be free from excessive force is well established under the Fourth
Amendment's prohibition against unreasonable seizure of the person.
Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998).  The Fourth
Amendment's "objective reasonableness" standard applies to claims
of excessive force.  Kuha v. City of Minnetonka, 365 F.3d 590, 597
(8th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395
(1989)).  Law enforcement officers are, of course, permitted to use
some degree of physical force to arrest a suspect or perform an
investigatory stop.  Graham, 490 U.S. at 396.  In such cases, their
use of force is judged from the on-scene perspective of a
reasonable law enforcement officer's belief as to the appropriate
use of force.  Saucier v. Katz, 533 U.S. 194, 205 (2001).

        According to Strandlund, when he saw his son-in-law on his
knees surrounded by deputies, he sought to find out what was
happening.  At this point, he was tackled from behind by Deputy
Hawley.  Deputy Hawley's claim that Strandlund posed an immediate
threat to the safety of the other deputies rings hollow.  There is
simply no objective evidence showing how Strandlund's actions
constituted any kind of threat.

        A private citizen's questioning of a suspicious incident is
not a threat.  A citizen is permitted to make a reasonable inquiry,
and he or she is protected by the First Amendment when doing so.
See City of Houston v. Hill, 482 U.S. 451, 462-63 (1987) ("The

freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). Deputy Hawley neither suggests Strandlund was subject to arrest, nor that there was any basis for an investigatory stop. Accordingly, the Court finds it was not reasonable for Deputy Hawley to use any degree of force against plaintiff.

Defendants argue that the street dance, with its large crowds of people, many of whom had been drinking, created a threatening situation for deputies trying to control a fight. This argument proves far too much. Were the Court to accept it, anyone on the street that night would have been subject to violent contact with police authorities.

Such circumstances alone do not afford law enforcement officers a blank check to use force against any citizen who questions their conduct. There is no evidence on the record that Deputy Hawley, or any other deputy, directed Strandlund to stay away from the incident or vacate the area. Deputy Hawley gave Strandlund no warning before using physical force; he simply tackled Strandlund from behind without provocation. Under these circumstances, the Court finds Deputy Hawley's use of force was objectively unreasonable.

Defendants next argue that Strandlund's injuries do not rise to the level of a constitutional violation of excessive force. The

Eighth Circuit Court of Appeals has ruled the minimum level of injury required for a Fourth Amendment excessive force claim is actual injury. <u>Dawkins v. Graham</u>, 50 F.3d 532, 535 (8th Cir. 1995). Strandlund claims he suffered a stiff neck for several weeks and loss of sleep resulting from outrage and embarrassment. The Court finds this injury meets the requisite showing of actual injury.

Based on these facts, Deputy Hawley's conduct violated the United States Constitution. Defendants properly recognize that use of excessive force is a violation of a clearly established right. Under these circumstances, a reasonable law enforcement officer would not have believed the force used against Strandlund to be constitutional. Deputy Hawley is therefore denied qualified immunity as to Strandlund's § 1983 claim.

C. <u>Monell Claim Under 42 U.S.C. § 1983</u>

Next, Strandlund alleges Mille Lacs County and Sheriff Lindgren are liable under <u>Monell</u> for the excessive force used against him. The complaint claims that, after being on notice of Deputy Hawley's propensities, the County and the Sheriff demonstrated deliberate indifference to these violations. According to the complaint, this constitutes an informal policy of tolerating such conduct. Strandlund further claims this informal policy or custom was the proximate cause of his injuries.

Defendants argue this claim fails as a matter of law.  The Court agrees.

    1.  <u>Legal Standard for Monell claim</u>

    A plaintiff wishing to sustain a <u>Monell</u> claim in the face of a motion for summary judgment must show the existence of a municipal policy or custom authorizing an unconstitutional act. See <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690-94 (1978); <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 603 (8th Cir. 2003).  A municipality may be liable under Section 1983 "where an official custom causes an individual to suffer a constitutional harm." <u>Thelma D. ex. rel. Delores A. v. Board of Educ.</u>, 934 F.2d 929, 932 (8th Cir. 1991).

    To establish liability, the official policy or custom must be the "moving force of the constitutional violation."  <u>Monell</u>, 436 U.S. at 694.  The existence of the policy or custom must be proven, because a municipality cannot be held liable solely on a respondeat superior theory.  <u>Id.</u> at 691.

    2.  <u>Analysis</u>

    Although Strandlund briefly cites the requirements needed to establish municipal and official liability under <u>Monell</u>,[3] he does

---

    [3]Plaintiff confuses supervisory liability with the liability of a public official in his official capacity under <u>Monell</u>. Section 1983 supervisory liability "is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." <u>Clay v. Conlee</u>, 815 F.2d 1164, 1170 (8th Cir. 1987).  Plaintiff's complaint clearly states Sheriff Lindgren is sued in his official capacity only; he is therefore not subject to supervisory liability.  <u>Id.</u> As no claim for supervisory liability has been made in this case, the Court cannot consider this aspect of plaintiff's argument.

not identify any facts which support his claim.  Identifying the challenged policy or custom in his opposition brief, plaintiff avers the County had a confusing manual which it ignored.  He also states County supervisors failed to investigate complaints of excessive force.  Even assuming that "a confusing manual" might constitute an unconstitutional municipal policy or custom, plaintiff fails to argue how that policy or the County's alleged custom of ignoring complaints of excessive force caused Strandlund's constitutional violation.  In order to show causation, Strandlund must show that the unconstitutional policy or custom was the "moving force" behind Deputy Hawley's decision to tackle him.  Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987).  There is simply no evidence that the identified policy or custom required Deputy Hawley to use excessive force.  Accordingly, Strandlund's Monell claim is dismissed.

D.   State Tort Claims of Assault, Battery, and Intentional Infliction of Emotional Distress

1.   Prima Facie Case Established

Defendants argue Strandlund has failed to make a prima facie case for his state tort claims of assault, battery, and intentional infliction of emotional distress.  Under Minnesota law, an officer's use of force may amount to an assault and battery if the force is excessive.  Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. 1984).  The same facts which support this Court's prior determination that Deputy Hawley used excessive force against

Strandlund establish the requisite prima facie case of assault and battery. As to plaintiff Strandlund's intentional infliction of emotional distress claim, while perhaps not plaintiff's strongest claim, the Court finds there remain genuine issues of material facts which preclude summary judgment, including the outrageousness of Deputy Hawley's conduct, and the severity of plaintiff's emotional distress. See Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999).

### 2. Official Immunity

Defendants further argue Deputy Hawley is entitled to statutory immunity on plaintiff's state tort claims, and that Mille Lacs County is consequently protected by vicarious official immunity from those same claims under the doctrine of respondeat superior.

### a. Legal Standard for Official Immunity

Deputy Hawley claims he is entitled to official immunity, which shields government officials from liability for discretionary acts performed in the course of official duties. See Janklow v. Minnesota Bd. of Exam'rs for Nursing Home Adm'rs, 552 N.W.2d 711, 716 (Minn. 1996). Official immunity "is designed to protect officials from the fear of personal liability that might deter independent action." Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 315 (Minn. 1998) (citations omitted). Official immunity

15

applies only to discretionary duties, as opposed to purely ministerial acts. <u>Wiederholt</u>, 581 N.W.2d at 315.

But even a discretionary act may not be afforded official immunity if it was willful or malicious. <u>Rico v. State</u>, 472 N.W.2d 100, 107 (Minn. 1991). "Malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." <u>Id.</u> (citations omitted). In determining whether an act was willful or malicious, a court inquires objectively into the legal reasonableness of an officer's action. <u>Dokman v. County of Hennepin</u>, 637 N.W.2d 286, 296 (Minn. App. 2001).

Mille Lacs County claims vicarious official immunity protects it against plaintiff's respondeat superior claims. Vicarious official immunity protects a governmental entity from suit based on the acts of an employee who is entitled to official immunity. <u>See Wiederholt</u>, 581 N.W.2d at 316. The government enjoys vicarious official immunity when "the threat of liability against the government would unduly influence government employees from exercising independent judgment in pursuit of legitimate public policy . . . ." <u>S.L.D. v. Kranz</u>, 498 N.W.2d 47, 51 (Minn. App. 1993).

b.  <u>Analysis</u>

All parties admit Deputy Hawley's use of force against Strandlund was discretionary. The issue, then, is whether Deputy

Hawley acted willfully or maliciously.  Again, the facts supporting this Court's prior determination concerning qualified immunity establish Deputy Hawley's force against plaintiff Strandlund as a violation of Strandlund's constitutional right to be free from the use of excessive force.  This being so, Deputy Hawley's use of force was willful and malicious.  If proven, Deputy Hawley acted outside the scope of his charged authority, and may be held personally liable for his conduct. <u>Dokman</u>, 637 N.W.2d at 296.  He is therefore not entitled to official immunity.  It follows, then, that Mille Lacs County is not entitled to vicarious official immunity for plaintiff's claims of respondeat superior. <u>Wiederholt</u>, 581 N.W.2d at 316.

     E.   <u>State Tort Claims of Negligent Supervision</u>

Strandlund claims Mille Lacs County and Sheriff Lindgren are liable for the negligent selection, training, retention, supervision, investigation, and discipline of Deputy Hawley (hereinafter "negligent supervision claims").  Defendants assert entitlement to statutory immunity in response to these claims.  Plaintiff Strandlund's pleadings fail to reply to this defense, presumably waiving the claims.  In any case, the Court finds the County and the Sheriff are shielded by immunity as to these claims.

A municipality enjoys statutory immunity, sometimes called discretionary immunity, for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or

duty, whether or not the discretion is abused." Minn. Stat. §
466.03, subd. 6 (2006). Statutory immunity must be construed
narrowly. Gleason v. Metro. Council Transit Operations, 582 N.W.2d
216, 220 n.5 (Minn. 1998). It applies to governmental policy
decisions that involve a balancing of economic, social, and
political considerations. Id. Minnesota courts have determined
that "[h]iring, supervising, training, and retaining municipal
employees are policy-level activities that are protected by
statutory immunity." Fear v. Indep. Sch. Dist. 911, 634 N.W.2d
204, 212 (Minn. App. 2001); see also Watson by Hanson v. Metro.
Transit Comm'n, 553 N.W.2d 406, 413 (Minn. 1996).

Accordingly, Mille Lacs County's allegedly negligent
selection, training, retention, supervision, investigation, and
discipline of Deputy Hawley were discretionary, policy-level
activities. Mille Lacs County is therefore entitled to statutory
immunity as to those claims.

Defendants' argument that Sheriff Lindgren should enjoy the
protection of statutory immunity fails, because statutory immunity
applies only to municipalities. See Minn. Stat. § 466.03 (2006).
Sheriff Lindgren is protected, however, by official immunity.

As discussed above, "official immunity protects a public
official charged by law with duties that call for the exercise of
judgment or discretion unless the official is guilty of a wilful or
malicious wrong." Gleason, 582 N.W.2d at 220 (citations ommitted).

18

Official immunity is broader than statutory immunity, protecting both policy-making discretion as well as operational discretion. See id. The Court has already found that the government conduct at issue was discretionary. Strandlund does not allege Sheriff Lindgren acted willfully or maliciously. Accordingly, the Court finds Sheriff Lindgren entitled to official immunity against Strandlund's negligent supervision claims.

IV.  Conclusion

For the foregoing reasons, IT IS ORDERED that:

1.  Pursuant to Fed. R. Civ. P. 21, the claims of plaintiffs Christopher Holscher, Jeremiah Brendsel, and Richard Krawiecki are hereby dropped from this case and dismissed without prejudice.

2.  As to the claims brought by plaintiff Lonnie Strandlund, defendants' motion for summary judgment [Docket No. 11] is granted in part and denied in part, as follows:

a.  As to plaintiff Strandlund's Monell claim (Cause of Action No. 2), defendants' motion is granted.

b.  As to plaintiff Strandlund's tort claims for negligent selection, training, retention, supervision, investigation, and discipline (Cause of Action No. 7), defendants' motion is granted.

c.  As to all other claims (Nos. 1, 3-6, & 10) brought by plaintiff Strandlund, defendants' motion is denied.

19

Dated:   March <u>30</u>, 2007


                                    <u>s/ JAMES M. ROSENBAUM</u>
                                    JAMES M. ROSENBAUM
                                    United States Chief District Judge